**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

STEPHANIE M. FINCH,

                            Plaintiff,

       -against-                                      17-CV-892 (OTW)

ANDREW M. SAUL, COMMISSIONER OF
SOCIAL SECURITY,

                            Defendant.             **MEMORANDUM OPINION & ORDER**

-----------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

**I.    Introduction**

Plaintiff Stephanie M. Finch brought this action seeking judicial review of a final decision of the Commissioner of Social Security[1] ("Commissioner") denying her application for supplemental security income and disability insurance benefits. On April 1, 2019, the Court granted Plaintiff's motion for judgment on the pleadings, remanding the case to the Commissioner pursuant to 42 U.S.C. § 405(g). (ECF 24, the "Opinion and "Order"). Plaintiff now seeks an award of attorney fees in the amount of $10,152.25 under the Equal Access to Justice Act ("EAJA"). (ECF 26). The Commissioner opposes a fee award and argues, in the alternative, that if the Court were to grant a fee award, certain tasks are not compensable and the award should be payable to Plaintiff, not her attorney. (ECF 35). For the reasons stated below,

---

[1] This action was originally brought against Carolyn W. Colvin, who was then the acting Commissioner of Social Security. The current Commissioner is Andrew M. Saul and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g).

Plaintiff's Motion is **GRANTED IN PART**, and Plaintiff is awarded fees in the amount of $9,763.45, payable to Plaintiff.

II.     **Facts and Procedural History**

Familiarly with the underlying facts, including the underlying Social Security denial decision by ALJ Kieran McCormack, is presumed and can be referred to in the Opinion and Order. (ECF 24).

On April 1, 2019, I issued the Opinion and Order, granting Plaintiff's motion for judgment on the pleadings to the extent that the case is remanded to the Commissioner and denied the Commission's motion for judgment on the pleadings. (ECF 24). The judgment was entered the same day. (ECF 25).

The Opinion and Order remanded the case because (1) "ALJ McCormack based his decision primarily on the opinions of two non-treating physicians to the exclusion of Plaintiff's treating physicians" in contravention of the "treating physician" rule; (2) "ALJ McCormack's decision does not engage in an evaluation as to the credibility of Plaintiff's complaints regarding the pain and discomfort caused by radiation damage"; (3) ALJ McCormack "failed to include the impact of Plaintiff's gastrointestinal issues in Plaintiff's RFC"; and (4) "ALJ McCormack fail[ed] to explain his ignoring of the vocational expert's testimony that with the bathroom-break limitation described by Plaintiff, no suitable job exists in the national economy." (ECF 24).

Plaintiff filed her motion for attorney fees pursuant to the EAJA on June 28, 2019 (the "Motion"). (ECF 26, *see* ECF 29 for the memorandum of law in support and ECF 27 and 28 for supporting affidavits). The Commissioner, having received extensions of time, filed its

opposition on August 20, 2019 (the "Opposition"). (ECF 35). The Plaintiff filed her reply on August 27, 2019 (the "Reply"). (ECF 36).

### III. Discussion

The EAJA provides in pertinent part that:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

Thus, the EAJA statue has four conditions for a plaintiff to receive fees: "(1) that the claimant be a 'prevailing party'; (2) that the Government's position was not 'substantially justified'; (3) that no 'special circumstances make an award unjust'; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement." *Comm'r, INS v. Jean*, 496 U.S. 154, 158 (1990); *see also Gomez-Belano v. Holder*, 644 F.3d 139, 144 (2d Cir. 2011).

If plaintiffs are entitled to attorneys' fees under the EAJA, the size of the award must be determined. The EAJA provides that the "fees awarded . . . shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 US.C. § 2412(d)(2)(A).

3

1. **Prevailing Party**

"[S]tatus as a prevailing party is conferred whenever there is a 'court ordered chang[e] in the legal relationship between [the plaintiff] and the defendant' or a 'material alteration of the legal relationship of the parties.'" *Vacchio v. Ashcroft*, 404 F.3d 664, 674 (2d Cir. 2005). A litigant who has received a remand is a prevailing party. *See McKay v. Barnhart*, 327 F. Supp. 2d 263, 266-67 (S.D.N.Y. 2004) (finding that plaintiff, who received remand of his social security case, was the prevailing party) (citing *Shalala v. Schaefer*, 509 U.S. 292 (1993)). The Commissioner does not challenge that Plaintiff is the prevailing party. Because Plaintiff received a remand, she is the prevailing party.[2] *See id*.

2. **Substantial Justification**

The Government "bears the burden of showing that [its] position was 'substantially justified,' which the Supreme Court has construed to mean 'justified to a degree that could satisfy a reasonable person.'" *Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 81 (2d Cir. 2009) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). To meet the Commissioner's burden that its position was "substantially justified," the Commissioner must "make a strong showing that its action was justified to a degree that could satisfy a reasonable person" and that its position was substantially justified in "law and fact." *See Healey v. Leavitt*, 485 F.3d 63, 67 (2d Cir. 2007) (internal quotations omitted); *Vacchio*, 404 F.3d at 674. "Being substantially justified is indeed a *higher standard* than having a reasonable position." *Rocchio v. Comm'r of Soc. Sec.*, No. 08-cv-3796 (JPO), 2012 WL 3205056, at *2 (S.D.N.Y. Aug.7, 2012) (citing *Pierce v.*

---

[2] A prevailing plaintiff must also have a net worth of under $2,000,000. *See* 28 U.S.C. § 2412(d)(2). Plaintiff's net worth is under $2,000,000. (*See* ECF 27 Finch Affidavit ¶ 2).

4

*Underwood*, 487 U.S. 552, 556 n.2 (1988) ("[O]ur analysis does not convert the statutory term 'substantially justified' into 'reasonably justified'")) (emphasis added). Both the underlying agency determination and litigation defending that strategy both need to be substantially justified. *See Healey*, 485 F.3d at 67.

The Commissioner argues that its position was justified because there was substantial justification in finding Plaintiff not disabled. Namely, there is support in the record for: (a) ALJ McCormack's decision to give the consulting physicians' opinions more weight than the treating physicians and (b) ALJ McCormack's weighing of Plaintiff's subjective symptoms. (*See* ECF 35 at 4-12). Rather than attempt to show how there could be a reasonable dispute over the ALJ's reasoning, the Commissioner essentially brings a motion for reconsideration. In this case, the Commissioner's arguments fail for the same reasons articulated in the Opinion and Order: ALJ McCormack failed to develop the reasons for which he denied Plaintiff's case. The ALJ has the responsibility to develop the record. *See Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999). When the District Court "remands on the ground that the evidence was insufficient to render a ruling, the question is not whether the Commissioner was reasonable in not granting plaintiff's claim but whether or not the Commissioner was reasonable in denying her claim and pursuing his opposition to this litigation based on that very evidence." *See Hogan v. Astrue*, 752 F. Supp. 2d 412, 415 (S.D.N.Y. 2010).

### a. Vocational Expert Testimony & Gastrointestinal Issues

The Commissioner does not try to argue that ALJ McCormack was substantially justified in ignoring the vocational expert's testimony and Plaintiff's gastrointestinal issues.[3] For the failure to properly develop the record with regard to these two issues, it is sufficient to find the Commissioner was not substantially justified in its position.

### b. Treating Physician Testimony

Considering the arguments the Commissioner does make, I find them without merit. Regarding the weighing of the physicians' opinions, I found that remand was warranted so that the ALJ could conduct a "proper evaluation of Plaintiff's treating physicians' opinions and determin[e] the proper weight to grant them." (ECF 24 at 26). "[G]ood reasons" must be given for declining to afford a treating physician's opinion controlling weight." (ECF 24 at 24). Remand is warranted "when the Commissioner has not provided 'good reasons' for the weight given to a treating physician opinion." *Id.* This Court did not find good reasons, and the Commissioner's attempt to reargue fails.

---

[3] The vocational expert testified that someone who needed to take at least 15% of the workday off for breaks (as Plaintiff would need to because of her frequent diarrhea) would be precluded from *all* work. (Tr. 796) (emphasis added). ALJ McCormack did not address this testimony, and I ordered on remand that the record be further developed on this issue: "the Commissioner shall engage in discussion of whether there exist jobs in the national economy that account for Plaintiff's limitations caused by her severe diarrhea." (ECF 24 at 29). This case is similar to *Santos v. Astrue*, where the court found that "[g]iven that the Commissioner pursed litigation while fully aware that the [vocational expert] had not cited a single job consistent with [plaintiff's ability], the Court [found] that the Commissioner's position was not substantially justified under the EAJA." 752 F. Supp. 2d 412, 416 (S.D.N.Y. 2010). Further, ALJ McCormack failed to include the impact of Plaintiff's gastrointestinal issues, which include frequent diarrhea, in Plaintiff's RFC. (ECF 24 at 27). This Court's remand was the second time the Commissioner was directed to further develop the record with regard to this issue. (*See id.* ("[T]his case had been previously remanded for similar deficiencies in ALJ Rodriguez's decision.")). ALJ McCormack relied on the same inadequate evidence as did the previous ALJ, ALJ Rodriguez and provided no evidence of efforts to obtain additional evidence from Plaintiff's treating gastroenterologist. (*See id.*). The Commissioner's argument that "there is evidence" is not an argument for substantial justification. (ECF 35 at 11). *See Rocchio*, 2012 WL 3205056, at *2 (citing *Pierce*, 487 U.S. at 556 n.2).

Dr. Gaeta, a consulting expert, never examined Plaintiff; he only had access to the record. The Commissioner's main justification for ALJ McCormack's reliance on Dr. Gaeta's opinion is that Dr. Gaeta was able to review and provide citations to the record, and, circularly, was able to consult the full record because he was a medical expert. (ECF 35 at 5) ("[T]he ALJ found that Dr. Gaeta not only supported his opinions with respect to plaintiff's residual functional capacity by reference to [the record], but also considered that Dr. Gaeta, unlike the treating physicians, was an impartial medical expert, and 'had the opportunity to review the record in its entirely.'"). The Commissioner rehashes and repeats old arguments.

Dr. Malhotra, a consultative orthopedic examiner, examined Plaintiff and found mild limitations. ALJ McCormack afforded Dr. Malhotra's opinion significant weight without proper justification in the record. (ECF 24 at 25). The Commissioner, again, proffers a circular, illogical justification for ALJ McCormack's decision: "the ALJ stated that he gave Dr. Malhotra's opinion significant weight 'because it is consistent with the doctor's examination findings.'" (ECF 36 at 6). The Commissioner is arguing that as long as a consulting expert's opinion is consistent (as it should and must be) with his examination, then that is good reason. The Commissioner does not offer support for such a low standard for substantial justification, which is contrary to the case law that requires substantial justification to be a "higher standard than having reasonable position." *Rocchio*, 2012 WL 3205056, at *2 (citing *Pierce*, 487 U.S. at 556 n.2).

Dr. Morrissey, Plaintiff's ob-gyn, treated Plaintiff from 2008-2011. The Commissioner selectively cites from Dr. Morrissey's reports, relying on earlier reports and ignoring later reports when further symptoms had developed. (ECF 35 at 6-7) (citing 2009 report when Plaintiff's only symptom at the time was enteritis). By 2010, Plaintiff reported additional

symptoms such as panic attacks, irregular bowel movements, difficulty sleeping, chronic fatigue, pain in the hip, lower back, and abdomen. (Tr 630, 633, 636). On remand, I directed the Commissioner to do a proper evaluation of Plaintiff's treating physicians' opinions, including the opinions of Dr. Morrissey. (ECF 24 at 26).

Dr. Bodack, Plaintiff's physiatrist, concluded on multiple occasions that Plaintiff was "fully disabled and cannot work." (ECF 24 at 11-15). He treated Plaintiff for five years, from 2010-2015. The Commissioner argues that these opinions "are not medical opinions, but rather opinions on an issue reserved to the Commissioner because they are administrative findings that are dispositive of a case, and as such are not entitled to any special significance." (ECF 35 at 7) (citing 20 C.F.R. §§ 404.1527(d)(1), (3); 416.927 (d)(1), (3)). This is a reductive reading of Dr. Bodack's treatment of Plaintiff, which documented five years of symptoms that supported a conclusion that Plaintiff could not work. (*See* ECF 24 at 12-15). The Commissioner tries to brush aside Dr. Bodack's reports arguing these were merely "reports of plaintiff's subjective complaints" and not Dr. Bodack's medical opinion. (ECF 35 at 8). The Commissioner ignores that pain, is by its nature, reported via complaints[4] and Dr. Bodack's long treatment of Plaintiff's conditions. For instance, Dr. Bodack diagnosed Plaintiff with bursitis in both hips, chronic pain syndrome, and leg length discrepancy. (*See* ECF 24 at 12-13). Additionally, he prescribed multiple prescription drugs to Plaintiff for her pain and referred her to specialists. (*See id.*). On

---

[4] The Cleveland Clinic writes "[t]here is no way to objectively measure pain" and "only the person with chronic pain can provide a description of how much pain he or she is feeling." *See* Chronic Pain: Diagnosis and Tests, available at https://my.clevelandclinic.org/health/diseases/4798-chronic-pain/diagnosis-and-tests (last accessed Apr. 15, 2020).

remand, I directed the Commissioner to do a proper evaluation of Plaintiff's treating physicians' opinions, including the opinions of Dr. Bodack. (ECF 24 at 26).

For the reasons stated above, ALJ McCormack did not develop the record fully, as was his responsibility, for declining to afford a treating physician's opinion controlling weight. And, because he did not develop fully, he lacked substantial justification. *See Santos*, 752 F. Supp. 3d at 415 (finding that the Commissioner lacked substantial justification when the ALJ failed to develop the record at the administrative level).

### c. Plaintiff's Credibility

Regarding the weighing of Plaintiff's subjective credibility, I found that the record needed further development regarding the credibility of her complaints regarding the pain and discomfort caused by radiation damage. (ECF 24 at 26-27). The Commissioner argues that ALJ McCormack did, citing to a page in the Record in which ALJ McCormack did not evaluate Plaintiff's credibility, but merely stated that her testimony was not "entirely consistent." (ECF 35 at 9 (citing Tr. 724)).

### 3. Special Circumstances and Timeliness

"Courts look to traditional equitable principles when deciding whether special circumstances would make an award of attorney's fees unjust." *See McKay v. Barnhart*, 327 F. Supp. 2d 263, 267 (S.D.N.Y. 2004). The Commissioner does not argue that there are any special circumstances that would make an award unjust, and I find there are not any.

"[A] judgment rendered by a court that terminates the civil action for which EAJA fees may be received" will be considered a final judgment, and the thirty-day fee application period will run "after the time to appeal that final judgment" has expired." *United States v. 27.09 Acres*

9

*of Land*, 1 F.3d 107, 11 (2d Cir. 1993) (internal quotations omitted). Plaintiff filed her motion within 30 days after the Commissioner's time to appeal expired, therefore the motion is timely.

### 4. Reasonable Attorney's Fees

The Commissioner argues in the alternative that even if fees are awarded under the EAJA, Plaintiff's requested fees includes clerical tasks, which are non-compensable, and the fees should be paid directly to Plaintiff, rather than to Plaintiff's attorney. (ECF 35 at 1).

#### a. Rate of Fees

Unaddressed by both parties, but what the Court is required to approve, are Plaintiff's counsel's rates. Plaintiff's fee application requests a rate of $192.68 per hour for 2016 work, $196.79 per hour for 2017 work, and $201.60 per hour for 2019 work. (ECF 28 at ¶ 7). The statutory rate for EAJA cases is $125 per hour "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 US.C. § 2412(d)(2)(A).

The EAJA does not define cost of living, but the Second Circuit has held that it is "properly measured by the Consumer Price Index" ("CPI"). *Harris v. Sullivan*, 968 F.2d 263, 265 (2d Cir. 1992). There is not one set CPI, for which there are national and regional variations. Courts have held regional CPIs to "better indicate[] the actual costs of business borne by counsel." *Bathrick v. Astrue*, 2015 WL 3870268, at *3 (D. Conn. June 23, 2015). Courts calculate the cost of living adjustment by "multiplying the $125 statutory rate by the annual average consumer price index figure for all urban consumers ('CPI-U') for the years in which counsel's work was performed, and then dividing by the CPI-U figure for March 1996, the effective date

of EAJA's $125 statutory rate." *See Caplash*, 294 F. Supp. 3d at 136 (citing cases). It is the discretion of the district court to implement a cost of living adjustment. *See id.* at 136-37.

Attorneys seeking fees above the $125 cap for "special factor[s]" must show that they are "qualified for the proceedings in some specialized sense, rather than just in their general legal competence." *Healey*, 485 F.2d at 68 (quoting *Pierce*, 486 U.S. at 572). The "special factor" exception "must be interpreted narrowly and cannot be read to encompass situations in which normally skilled and qualified attorneys are simply in short supply." *Wells v. Bowen*, 855 F.2d 37, 42 (2d Cir. 1988). To the extent that the "tasks are particularly time-consuming or demanding in a particular case, that fact would be captured in the number of hours expended on the litigation, and the plaintiffs' counsel would be compensated accordingly in any fee award." *Healey*, 485 F.2d at 69.

Plaintiff provides no reason for the enhanced rates. Plaintiff's counsel would not be entitled to enhanced fees as he would need to show that he had "some distinctive knowledge or specialized skill needed for the litigation in question – as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *See Pierce*, 487 U.S. at 572. The Court will give Plaintiff all reasonable inferences and assumes she argues for a cost of living adjustment. This Court will use the Consumer Price Index ("CPI") for All Urban Consumers ("CPI-U"), which other courts in this circuit have used. *See Santos*, 752 F. Supp. 2d at 417 (adopting CPI-U); *Caplash*, 294 F. Supp. 2d at 136 (citing cases using CPI-U). The CPI-U for the Northeast

region (annualized average) was 254.85 (2016); 259.54 (2017); and 269.39 (2019).[5] This calculates to rates (in dollars) of:

2016: 195.67 = (254.85 x 125)/162.80
2017: 199.28 = (259.54 x 125)/162.80
2019: 206.60 = (269.49 x 125)/162.80

Had Plaintiff's counsel argued for a cost-of-living adjustment, Plaintiff could have been entitled to marginally higher fees. This Court will not change Plaintiff's requested rates of $192.68 per hour for 2016 work, $196.79 per hour for 2017 work, and $201.60 per hour for 2019 work, which are within the acceptable range for a cost of living adjustment.

### b. Clerical Tasks

The Commissioner takes issue with certain fees, which it claims are "clerical services" done by a paralegal. (ECF 35 at 12). Those tasks are "scanning documents, serving documents by certified mail, preparing a certification of service, filing documents, calendaring dates, and preparing covers and tables of contents." (*Id.*). For these tasks, Plaintiff requests $408.00 for 5.1 hours of work at $80 per hour. Plaintiff requests a total of $1,296.00 for a total of 16.20 hours of paralegal work. (ECF 29-1 at 4).

As a preliminary matter, a prevailing party can recover "paralegal fees from the Government at prevailing market rates." *Caplash*, 294 F. Supp. 3d at 140 (citing *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 590 (2008)). Plaintiff claims a paralegal fee rate of $80 per hour, and the Commissioner does not challenge the amount. Courts in this district have granted

---

[5] Mid-Atlantic Information Office, U.S. Bureau of Labor Statistics, https://www.bls.gov/regions/mid-atlantic/data/consumerpriceindexhistorical_northeast_table.htm (last accessed Apr. 15, 2020). Calculations of averages performed by the Court.

paralegal fees in the $80 per hour range. *See id.* (citing cases with a range of $75-$100 per hour).

Although paralegal fees are recoverable, not all types of work – regardless of who performs the work – is compensable. "Administrative or clerical work is not compensable under the EAJA." *See Kottwitz v. Colvin*, 114 F. Supp. 3d 145, 148 (S.D.N.Y.) (denying EAJA fee award for administrative work); *see also Yulfo-Reyes v. Berryhill*, No. 17-cv-2015 (SALM), 2019 WL 582481 at *33 (D. Conn. Feb. 13, 2019) (citing cases). "[P]urely clerical or secretarial tasks should not be billed under fee shifting statues regardless of who performs them."

Examining the challenged time (*see* ECF 35 12-13 n.4)[6], some tasks are clearly clerical. *See, e.g.*, "scan to file" (April 13, 2017), "diary briefing schedule due dates" (July 27, 2017), "prepare . . . cover sheet and table of contents" (Sept. 19, 2017). Others, however, are more substantive and not purely clerical in nature. *See, e.g.*, "prepare procedural history and factual background for memo of law; begin preparing medical evidence summary for memo of law" (Sept. 19, 2017); "review, revise . . . notice of motion and memo of law" (Sept. 25, 2017). The corresponding time entries for these days are generally for larger time blocks than the time entries for non-substantive tasks, such as "scan to file", which was 0.10. However, the time spent on each task is not broken down, *i.e.* block billed, making it difficult to parse out the time spent on clerical versus non-clerical tasks. *See Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 188 F. Supp. 3d 333, 343 (S.D.N.Y. 2016) ("[A]ttorneys seeking reimbursement 'must provide enough information for the [c]ourt, and the adversary to assess

---

[6] The Government does not challenge all paralegal time.

the reasonableness of the hours worked on each discrete project."). The Court, however, is not required to "scrutinize each action taken or time spent on it" and instead has "discretion to simply to apply a reasonable percentage reduction as a practical means of trimming fat from a fee application." *Hogan*, 539 F. Supp. 2d at 683 (citing cases); *see also Salvo v. Comm'r of Soc. Sec.*, 751 F. Supp. 2d 666, 674 (S.D.N.Y. 2010) (holding a court "need not scrutinize the time spent on each itemized task for which fees are requested."). Reviewing bill itemization, the large majority of the paralegal time, approximately 70%, is devoted to non-clerical tasks. Therefore, a 30% reduction in the overall paralegal fees would be appropriate in this instance, making the paralegal award $907.20.

5. **Award is Payable to Plaintiff**

Courts in this district generally award EAJA fees directly to the claimant, with the expectation she will then abide by her obligations to compensate her lawyer. *See Hogan*, 539 F. Supp. 2d at 683-84 ("[D]istrict courts in this circuit which have had the occasion to examine the issue, however, have generally concluded that attorney's fees awarded under the EAJA are awarded against the federal government and paid directly to claimant [who] may then use any fees . . . awarded pursuant to EAJA to pay his counsel.") (citing cases). Therefore, the EAJA award should be directly payable to Plaintiff.

**IV.** **Conclusion**

For the above reasons, Plaintiff shall be awarded $9,763.45 in attorney fees, reflecting $8,856.25 of attorney work and $907.20 of paralegal work, payable to Plaintiff.

The Clerk of Court is directed to close ECF 26.

**SO ORDERED**.

*s/ Ona T. Wang*

Dated: April 22, 2020                          **Ona T. Wang**
New York, New York                   United States Magistrate Judge